SHEPPARD MULLIN RICHTER & HAMPTON LLP
  Limited Liability Partnership
  Including Professional Corporations
TRACEY A. KENNEDY, Cal. Bar No. 150782
  tkennedy@sheppardmullin.com
LIMORE TORBATI, Cal. Bar No. 301932
  ltorbati@sheppardmullin.com
TIMOTHY T. KIM, Cal. Bar No. 314365
  tkim@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:  213.620.1780
Facsimile:   213.620.1398

Attorneys for Defendants
COMERICA INCORPORATED,
COMERICA BANK, and COMERICA
MANAGEMENT COMPANY, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLADYS MARRUJO, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>COMERICA BANK, a Texas Corporation; COMERICA INCORPORATED, a Delaware Corporation; and COMERICA MANAGEMENT COMPANY, INC., a Michigan Corporation; and Does 1 through 50, inclusive,<br><br>Defendants. | Case No. 20-CV-01523-MMA-LL<br><br>[Removed from Superior Court of California, County of San Diego, Case No. 37-2020-00016603-CU-OE-CTL]<br><br>**DEFENDANTS COMERICA INCORPORATED, COMERICA BANK, AND COMERICA MANAGEMENT COMPANY, INC.'S _AMENDED_ NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO THE CLASS ACTION FAIRNESS ACT**<br><br>Complaint Filed:  May 26, 2020 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF AND HER ATTORNEY OF RECORD:**

PLEASE TAKE NOTICE that Defendants Comerica Incorporated, Comerica Bank, and Comerica Management Company, Inc. (collectively, "Defendants" or "Comerica") hereby remove the action *Gladys Marrujo v. Comerica Incorporated, et al.*, pending in the Superior Court of California, County of San Diego, Case No. 37-2020-00016603-CU-OE-CTL, to the United States District Court for the Southern District of California. Removal is based on the Class Action Fairness Act ("CAFA"). This Court has original subject matter jurisdiction over Plaintiff Gladys Marrujo's ("Plaintiff") lawsuit under 28 U.S.C. §§ 1332(d)(2), 1441, 1453, and 1446, because it is a proposed class action, minimal diversity exists, and the amount in controversy exceeds $5,000,000. Accordingly, removal is proper based on the following grounds:

## I. STATEMENT OF JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

1. On February 18, 2005, the Class Action Fairness Act ("CAFA") was enacted. In relevant part, CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

2. This Court has jurisdiction over this case under the CAFA, 28 U.S.C. section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), in that it is a civil class action wherein: 1) the proposed class contains at least 100 members; 2) the defendant is not a state, state official or other governmental entity; 3) the total amount in controversy for all class members exceeds $5,000,000; and 4) there is diversity of citizenship between at least one class member and one defendant. Each of these conditions were satisfied at the time this action was initiated and now at the time of removal.

3. CAFA's minimal diversity requirement is satisfied when: 1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens, 2) at least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen, or 3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. *See* 28 U.S.C. § 1332(d).

4. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

## II.     CLAIMS AND PROCEDURAL HISTORY

5. On or about May 26, 2020, Plaintiff filed a putative class action complaint against Defendants in the Superior Court of the State of California, County of San Diego. On July 10, 2020, Plaintiff served a copy of the Complaint, Summons, Civil Case Cover Sheet, and Notice of Case Assignment and Case Management Conference on Defendants. Attached hereto as Exhibits A-D is a true and correct copy of the Complaint, Summons, Civil Case Cover Sheet, and Notice of Case Assignment and Case Management Conference.

6. On August 4, 2020, Defendants filed their Answer to the Complaint. Attached hereto as Exhibit E is a true and correct copy of Defendants' Answer to Plaintiff's Complaint.

7. Plaintiff asserts in her Complaint that Defendants employed her and other persons as "Assistant Managers" throughout the state of California. See Complaint, ¶ 1.

8. Plaintiff's Complaint asserts seven (7) causes of action: (1) Failure to Provide Meal Periods; (2) Failure to Authorize and Permit Rest Periods; (3) Failure to Reimburse Business Expenses; (4) Failure to Pay All Wages; (5) Failure to Provide Accurate Itemized Wage Statements; (6) Failure to Pay Compensation When Due at Time of Separation; and (7) Unlawful and Unfair Business Practices.

9. A copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Superior Court of California for the County of San Diego.

1  Exhibits A-D contain all "process, pleadings, and orders" served on Defendants in
2  accordance with 28 U.S.C. § 1446(a).  No other proceedings have been held in this
3  action.

### III.  JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT IS SATISFIED

6        10.   Under the CAFA, a removing defendant need not submit any evidence
7  of the facts establishing jurisdiction in its notice of removal.  *Dart Cherokee Basin*
8  *Operating Co., LLC v. Owens*, 135 S.Ct. 547, 551 (2014) (A notice of removal
9  "need not contain evidentiary submissions.").  Rather, "[a] defendant's notice of
10 removal need include only a plausible allegation that the jurisdictional facts exists."
11 *Id*. at 554.  Evidence is required "*only* when the plaintiff contests, or the court
12 questions, the defendant's allegation." *Id*. (emphasis added); *Arias v. Residence Inn*
13 *by Marriott*, 936 F.3d 920 (9th Cir. 2019) (court may not remand where notice of
14 removal plausibly alleges the basis for removal, without giving the defendant an
15 opportunity to prove the jurisdictional requirements are satisfied).

16       11.   The United States Supreme Court in *Dart Cherokee* held that "no
17 antiremoval presumption attends cases invoking CAFA, which Congress enacted to
18 facilitate adjudication of certain class actions in federal court," adding that "CAFA
19 should be read 'with a strong preference that interstate class actions should be heard
20 in a federal court if properly removed by any defendant.'" *Id*.  Following *Dart*
21 *Cherokee*, the Ninth Circuit has directed the district courts to "interpret CAFA's
22 provisions under section 1332 *broadly in favor of removal…*" *Jordan v. Nationstar*
23 *Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015) (emphasis added); *see also Ibarra*
24 *v. Manheim Invs., Inc*., 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended
25 CAFA to be interpreted expansively"). In *Bridewell-Sledge v. Blue Cross*, 798 F.3d
26 923 (9th Cir. 2015), the Ninth Circuit held that under *Dart Cherokee*, the district
27 court erred "in its remand orders by applying a 'strong presumption against removal
28 jurisdiction.'"  *See also Moppin v. Los Robles Reg'l Med. Ctr*., 2015 U.S. Dist.

LEXIS 129574, at *4 (C.D. Cal. 2015) ("[N]o presumption against removal exists in cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court").

**A.** **The Case Is a Proposed Class Action with a Putative Class of At Least 100 Members (Assistant Banking Center Managers) and Defendants Are Not a State, State Official, or Government Entity**

12. This action has been styled as a California class action under California Code of Civil Procedure § 382. Complaint, ¶ 23 ("This class action is brought pursuant to California Code of Civil Procedure section 382."). Code of Civil Procedure § 382 is a state statute authorizing an action to be brought by one or more representative persons as a class action.

13. 28 U.S.C. § 1332(d)(5) excludes from CAFA jurisdiction cases in which "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief; or…the number of members of all proposed plaintiff classes in the aggregate is less than 100."

14. Defendants are not states, state officials, or government entities.

15. Plaintiff's Complaint alleges that "there are at least 500 members in the Class, and at least 250 members in the FORMER EMPLOYEE SUBCLASS." Complaint, ¶ 27. On the basis of its own investigation, Comerica has determined there are more than 100 current and former non-exempt Assistant Banking Center Managers in California during the four-year period prior to the filing of the Complaint. Declaration of Catherine Garrett ("Garrett Decl."), ¶ 3. Therefore, Plaintiff's proposed class consists of at least 100 members now at the time of removal and at the institution of this civil action.

**B.** **Minimum Diversity of Citizenship Exists Here**

1. CAFA requires minimum diversity of citizenship, pursuant to 28 U.S.C. section 1332(d)(2):

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which –
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

16. Plaintiff's Complaint alleges that she is a resident of California. Complaint, ¶ 6. Plaintiff's Complaint further alleges that the putative class consists of "present and former Assistant Managers e*mployed in the State of California . . . .*" *Id.*, ¶ 1 (emphasis added).

17. Although no *evidence* of domicile is required at the notice of removal stage (*Dart Cherokee*, 135 S.Ct. at 554; *Ehrman v. Cox Communs., Inc.*, 932 F.3d 1223 (9th Cir. 2019) (allegation of plaintiff's citizenship is sufficient for removal)), "[p]roof of residence in a state is usually thought *prima facie* evidence of domicile." *Bradley Min. Co. v. Boice*, 194 F.2d 80, 84 (9th Cir. 1951); *see also Anderson v. Watt*, 138 U.S. 694, 706 (1891) ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary…"); *Barbosa v. Transp. Drivers, Inc.*, 2015 WL 9272828, at *2 (C.D. Cal. 2015) ("a person's residence is *prima facie* evidence of his or her place of domicile for purposes of diversity jurisdiction") (quoting *Bey v. SolarWorld Indus. Am., Inc.*, 904 F. Supp. 2d 1103, 1105 (D. Or. 2012)). Furthermore, "a party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885 (9th Cir. 2013).

18. Further, where there are no allegations of citizenship of certain parties in the complaint, a removing party may introduce "objective facts" in support of removal that would tend to show the domicile or citizenship of a party in a particular state. *See Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986) ("the determination of an individual's domicile involves a number of factors (no single factor controlling),

including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes"); *see also Jones v. Law Firm of Hill and Ponton*, 141 F.Supp.2d 1349, 1355 (M.D. Fla. 2001).

19.     Here, the Complaint affirmatively states that Plaintiff was a resident of California at the time this case was filed. Complaint, ¶ 6. Accordingly, Plaintiff is at the time of this removal, and was at the institution of this civil action, a citizen of California for purposes of determining diversity. *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (residence is *prima facie* evidence of domicile for purposes of determining citizenship).

20.     Because Plaintiff resides in California, worked in California, and because Plaintiff's proposed class is defined to include persons "who are or were" employed in the State of California, Comerica may rely on the foregoing presumptions to establish that Plaintiff, and at least some of the putative class members, are now at the time of removal, and were at the institution of this civil action, domiciled in California and therefore citizens of California.

21.     <u>Comerica Incorporated</u>:  Comerica Incorporated is at the time of this removal, and was at the institution of this civil action, a corporation incorporated under the laws of Delaware. Garrett Decl., ¶ 7. As a corporation, Comerica Incorporated is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

22.     <u>Comerica Bank</u>:  Comerica Bank is at the time of this removal, and was at the institution of this civil action, a corporation incorporated under the laws of Texas. Garrett Decl., ¶ 5. As a corporation, Comerica Bank is deemed to be a

citizen of the state in which it has been incorporated and the state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).

23. <u>Comerica Management Company, Inc.</u>:  Comerica Management Company, Inc. is  at the time of this removal, and was at the institution of this civil action, a corporation incorporated under the laws of Michigan.  Garrett Decl., ¶ 6.  As a corporation, Comerica Management Company, Inc. is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).

24. <u>Headquarters of All Comerica Entities</u>:  In *Hertz Corp. v. Friend*, 559 U.S. 77, 92-3 (2010), the Supreme Court clarified the definition of a corporation's "principal place of business" and concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities."  The Supreme Court further clarified that, "in practice" the principal place of business "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination."  *Id.* At 93.

25. Each of the Comerica entities  maintain its corporate headquarters in Dallas, Texas.  Garrett Decl., ¶ 8.  Dallas, Texas is where the actual center of direction, control and coordination for Comerica takes place.  *Id*.  Accordingly, each of the Comerica entities has its principal place of business is, and was at the institution of this civil action, in the State of Texas.  *See* 28 U.S.C. § 1332(c)(1).

26. In accordance with the foregoing, Comerica Incorporated is  at the time of removal, and was at the time of the institution of this civil action, a citizen of Delaware and Texas.  Comerica Bank is a citizen of Texas.  Comerica Management Company, Inc. is a citizen of Michigan and Texas.  Plaintiff and some of the putative class members are now at the time of removal, and were at the institution of this civil action, citizens of California (and not citizens of Texas, Michigan, or Delaware).  Thus, the minimum diversity requirement under CAFA is satisfied.

-7-

27. <u>Doe Defendants</u>: Pursuant to 28 U.S.C. section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). *Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) (citizenship of fictitious defendants disregarded for removal). Thus, the existence of Doe defendants 1 through 50 does not deprive this Court of jurisdiction.

**C.    The Amount in Controversy Exceeds the $5,000,000 Requirement under CAFA**

28. Without making an admission of liability or damages with respect to any aspects of this case or the proper legal test(s) applicable to Plaintiff's allegations on behalf of herself and the putative class, the amount in controversy exceeds the jurisdictional minimum of this Court as detailed below.

29. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdiction threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014). Moreover, a defendant need not set forth evidence establishing the amount in its notice of removal. *Id*. A defendant is not obliged to "research, state, and prove the plaintiff's claims for damages." *McCraw v. Lyons*, 863 F.Supp. 430, 434 (W.D. Ky. 1994). A defendant can establish the amount in controversy by "providing only a short and plain statement of the grounds for removal." *Ehrman v. Cox Commc'ns, Inc.*, 2019 WL 3720013 (9th Cir. Aug. 8, 2019); *see also Dart Cherokee*, 135 S. Ct. at 547 (holding that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and evidentiary submissions are required only if "the plaintiff contests, or the court questions, the defendant's allegations"). In short, "a defendant satisfies the amount-in-controversy requirement under CAFA if it is *reasonably possible* that it may be

-8-

liable for the proffered punitive damages amount." *Greene v. Harley Davidson*, 2020 WL 3969285, at *4 (9th Cir. 2020).

30. CAFA authorizes the removal of class actions in which, among the other factors mentioned above, the *aggregate* amount in controversy for all class members exceeds five million dollars ($5,000,000.00). *See* 28 U.S.C. § 1332(d). By demonstrating that the actual amount in controversy exceeds the threshold, Defendants do not concede the validity of Plaintiff's claims or the likelihood that Plaintiff will recover anything.

31. "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*, 692 F.App'x 806, 807 (9th Cir. 2017). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *see also Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *3 (E.D. Cal. 2007) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe") (original emphasis); *see also Coleman v. Estes Express Lines, Inc.*, 730 F.Supp.2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy, the Court looks to what the plaintiff has alleged, not what the defendants will owe") (aff'd by 631 F.3d 1010 (9th Cir. 2011)).

32. In the Ninth Circuit, the amount in controversy is determined "at the time of removal." *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). In *Chavez v. JPMorgan Chase*, 888 F.3d 413, 417 (9th Cir. 2018), the Ninth Circuit held "[t]hat the amount in controversy is assessed at the time of removal does not mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy." *Chavez*, 888 F.3d at 417 (original

-9-

emphasis). *Chavez* held that "the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Id.* at 414-15.

33. Plaintiff's pleadings in this action fail to affirmatively disclose the amount in controversy or information from which Comerica could readily ascertain the amount in controversy without independent investigation and analysis. Plaintiff's pleadings were each "indeterminate" as to whether federal jurisdiction under 28 U.S.C. § 1332(d) existed within the meaning of *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689 (9th Cir. 2005) and *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121 (9th Cir. 2013).

34. Comerica provides the following calculations only to demonstrate that the amount in controversy in this case easily exceeds the jurisdictional amount in controversy under CAFA jurisdiction. Comerica makes no admission of any liability or damages with respect to any aspect of this case, or to the proper legal test to be applied to Plaintiff's claims. Nor does Comerica waive its right to ultimately contest the proper amount of damages due, if any, should Plaintiff prevail with respect to any of her claims.

35. Comerica independently determined based on its own business records that Plaintiff's proposed Putative Class is comprised of approximately 183 current and former Assistant Banking Center Managers ("ABCMs") in California during the four-year period prior to the filing of the Complaint. Garrett Decl., ¶ 3.

36. Comerica independently determined based on its own business records that Putative Class members worked a total of approximately 19,245 workweeks during the four-year period prior to the filing of the Complaint. Garrett Decl., ¶ 3.

37. Comerica independently determined based on Comerica's own business records that during the preceding four years prior to the filing of this action, i.e., May 26, 2016 to present (the "Class Period"), Comerica paid Proposed Putative Class members an average of $29 per hour during the Class Period. Garrett Decl., ¶ 4.

38. Comerica independently determined based on its own business records that between May 26, 2016 and present, at least 93 members of the Proposed Putative Class separated from employment with Comerica. Garrett Decl., ¶ 3.

39. Comerica independently determined based on its own business records that Comerica paid Proposed Putative Class members on a biweekly basis, and from May 26, 2016 to present, Comerica provided at least 9,622 wage statements to members of the Proposed Putative Class. Garrett Decl., ¶ 3.

<u>Amount in Controversy for Rest Break Premiums</u>

40. Rest breaks under California law are required for non-exempt employees who work three and a half (3 1/2) or more hours in a day. Non-exempt employees are entitled to a rest period of ten (10) minutes for each four (4) hours, or major fraction thereof, that they work in a day. *See* California Wage Orders, § 12. California law requires employers to pay employees one additional hour of pay at the employee's regular rate of compensation for each workday that a rest period that is required to be provided is not provided. Cal. Labor Code § 226.7.

41. Plaintiff alleges that "Defendants' policies and practices have required their Assistant Managers, including Plaintiff, to remain on the job at the banking centers unless relieved. This requirement, combined with Defendants' failure to ensure adequate staffing, as resulted in Defendants' failure to authorized and permit their bank tellers, including Plaintiff, to take state-mandated rest breaks." Complaint, ¶ 41. Plaintiff claims that as a consequence, Comerica did not authorize and permit Plaintiff and the Putative Class to take compliant rest periods and were not compensated one (1) hour of pay at the regular rate of compensation. *Id.*

42. In *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094 (2007), the California Supreme Court held that the premiums due under Cal. Labor Code § 226.7 are compensatory wages for statute of limitations purposes and therefore have a three year statute of limitations period. *See* Cal. Code Civ. Proc. § 338(a).

43. Plaintiff asserts that Comerica's alleged Labor Code violations constitute unlawful and/or unfair business practices under Business and Professions Code §§ 17200, *et seq.* and thus seeks restitution of all wages which have been allegedly withheld from Plaintiff and the Putative Class. Complaint, ¶ 64. California District Courts are split as to whether the four year statute of limitations under California Business & Professions Code § 17200 will extend the time to seek unpaid meal and rest period premiums. Cal. Bus. & Prof. Code § 17208; *compare Horton v. NeoStrata Co.*, 2017 WL 2721977 (S.D. Cal. 2017) and *Dittmar v. Costco Wholesale Corp.*, 2016 WL 3387464 (S.D. Cal. 2017) with *Parson v. Golden State FC, LLC*, 2016 WL 1734010 (N.D. Cal. 2016) and *Guerrero v. Halliburton Energy Servs. Inc.*, 231 F. Supp. 3d 797 (E.D. Cal. 2017).

44. Because the jurisdictional amount in controversy is determined based on what Plaintiff alleges, not what she will ultimately recover, a four year limitations period is appropriate for jurisdictional purposes. Therefore, the relevant time period to calculate Plaintiffs' amount in controversy for alleged rest period violations is four years prior to the date Plaintiff filed her Complaint to the present, *i.e.* from May 26, 2016 to the present. Complaint, ¶ 1 (defining the class period as reaching back four years).

45. Comerica independently determined based on its own business records and on the allegations in Plaintiff's Complaint that the amount in controversy for rest period premium damages is at least $2,790,525 based on five missed rest breaks per week (19,245 workweeks x 5 missed rest periods per week x $29 average hourly rate).

46. Comerica is justified in using a 100% violation rate in computing the amount in controversy based on the generalized nature of Plaintiff's allegations, which do not give rise to a more precise calculation. *See Coleman*, 730 F. Supp. 2d at 1149 (C.D. Cal. 2010) ("courts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation"); *see also Sanchez v. Russell Sigler, Inc.*, 2015 U.S. Dist. LEXIS 55667, *16 (C.D. Cal. Apr. 28, 2015) ("Defendant's use of a 100% violation rate is proper in this case because Plaintiff's complaint alleges universal deprivation of meal and rest periods"); *Mortley v. Express Pipe & Supply Co.*, 2018 WL 708115, at *4 (C.D. Cal. 2018) (100% violation rate proper when allegations are "routine and systematic violations" of California's meal and rest period laws).

<u>Meal Periods</u>

47. California law requires employers to pay employees one additional hour of pay at the employee's regular rate of compensation for each workday a meal period that is required to be provided is not provided. Labor Code § 226.7. California law requires provision of meal breaks to non-exempt employees who work more than five hours in a workday. Cal. Labor Code § 512. Plaintiff alleges that due to Comerica's "policies and practices," she and the Putative Class were required to work more than five hours without being provided with a meal period, and Comerica failed pay the meal period premium for each workday that a meal period was not provided. Complaint, ¶ 40.

48. Similar to Plaintiff's rest period allegations, Plaintiff alleges that Comerica violated California Business & Professions Code §§ 17200 *et seq.* for the alleged failure to provide meal periods. Complaint, ¶ 64. As noted above, the limitations period for a claim under California Business & Professions Code § 17200 is four years, and the appropriate period to use for determining the amount in controversy. Cal. Bus. & Prof. Code § 17208.

-13-

49. Comerica independently determined based on its own business records and on the allegations within Plaintiff's Complaint that the amount in controversy for meal period premium damages is at least $2,790,525 based on 5 missed meal periods per week (19,245 workweeks x 5 missed meal periods per week x minimum $29 hourly rate).

50. Comerica is justified in using a 100% violation rate in computing the amount in controversy based on the generalized nature of Plaintiff's allegations, which do not give rise to a more precise calculation. *See Coleman*, 730 F. Supp. 2d at 1149 (C.D. Cal. 2010) ("courts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

### Waiting Time Penalties

51. Under Cal. Labor Code § 203, "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201 [or] 202…any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

52. Plaintiff alleges that "Defendants have willfully failed and have refused to pay all compensation and wages due and owing, including premium wages for missed meal and rest breaks, to members of the FORMER EMPLOYEE SUBCLASS, including Plaintiff, upon their separation of employment." Complaint, ¶ 61.

53. The statute of limitations for Plaintiff's waiting time penalties claim is three years. Labor Code § 203(b); *Pineda v. Bank of Am., N.A.*, 50 Cal.4th 1389, 1390 (2010). There were at least 93 Putative Class members whose employment with Comerica terminated between May 26, 2016 and present. Garrett Decl., ¶ 3.

54. Comerica independently determined based on its own business records and on the allegations contained within Plaintiff's Complaint that if each Putative Class Member averaged a work schedule of eight hours per day, then waiting time penalties would total approximately $647,280 (93 Putative Class Members x $232 per day [$29 average hourly rate x 8 hours] x 30 days).

55. Therefore, the amount in controversy for Plaintiff's claims for rest breaks ($2,790,525), meal periods ($2,790,525), and waiting time penalties ($647,280) claims alone exceed the $5,000,000 jurisdictional amount required under CAFA.

Amount in Controversy for Plaintiff's Other Claims

56. In addition to the claims identified above, Plaintiff alleges that he and the Putative Class were not paid minimum and overtime wages in accordance with California law, that they were not provided with timely and accurate wage statements in violation of Cal. Labor Code § 226, and that they were not reimbursed for all business expenses in violation of Labor Code § 2802. Complaint, ¶¶ 42-53. However, Plaintiff's meal period, rest period, waiting time claims, and wage statement claim already total well over the $5 million jurisdictional minimum as required by CAFA. Assuming a minimum of one hour of overtime pay per class member per week at the hourly rate of $29 (and overtime rate of $43.5 per hour) a very conservative estimate of overtime liability would be: 19,245 workweeks x $43.5 overtime rate (assuming only one hour per week) = $837,157.50. Finally, assuming wage statement violations for only one half of the Putative Class (183 members): 91 x $4000 = $364,000. Labor Code section 226(e)(1) (maximum penalty is $4,000). Therefore, these additional claims conservatively total $1,201,157.5.

Amount in Controversy for Attorneys' Fees

57. Plaintiff also alleges an entitlement to attorneys' fees. Complaint, Prayer for Relief, ¶ 7. Under Ninth Circuit precedent, a plaintiff's claim for

attorneys' fees must be included in the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). In *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785 (9th Cir. 2018), the Ninth Circuit held that future attorneys' fees that are claimed, but not accrued at the time of removal, must be considered in the amount in controversy.

58.     Although not a per se rule (*see Fritsch*, 899 F.3d at 796, n. 6), courts may use a 25% benchmark of total recovery when estimating the attorneys' fees in controversy. *Greene v. Harley Davidson*, 2020 WL 3969285, n.4 (9th Cir. 2020); *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013); *Rodriguez v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D. Cal. 2014); *Marshall v. G2 Secure Staff, LLC*, 2014 WL 3506608 (C.D. Cal. 2014); *Jasso v. Money Mart Exp., Inc.*, 2012 WL 699465 (N.D. Cal. 2012); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. 2018); *Ramirez v. Benihana Nat'l Corp.*, 2019 WL 131843, at *2 (N.D. Cal. 2019); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees").  Thus, an additional minimum amount of $1,857,371.87 must be included in the amount in controversy ([$2,790,525 alleged rest period premiums + $2,790,525 alleged meal period premiums + $647,280 alleged waiting time penalties + $837,157.50 alleged unpaid overtime wages + $364,000 alleged wage statement violations] x 25% = $1,857,371.87).

59.     And the same amount for alleged attorneys' fees is in controversy using the "lodestar" method of fee computation. *See Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66 n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery"); *see also Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293, at *5 (S.D. Cal. 2013) ("California has recognized that most

-16-

fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent").

60. For all of the forgoing reasons, Comerica alleges that the amount placed in controversy by Plaintiff is significantly greater than the jurisdictional minimum of $5,000,000 required by CAFA, both at the time removal and at the institution of this civil action [$2,790,525 (rest period premiums) + $2,790,525 (meal period premiums) + $647,280 (waiting time penalties) + $837,157.50 (overtime) + $364,000 (wage statements) + $1,857,371.87 (attorneys' fees) = $9,286,859.37]. The amount in controversy requirement for CAFA is therefore satisfied.

**D.   No CAFA Exceptions Apply**

61. CAFA contains a number of exceptions to its grant of original jurisdiction, contained in 28 U.S.C. §§ 1332(d)(3)-(4). However, none of these exceptions are applicable here. The party resisting removal has the burden of proving the existence of a CAFA exception. *King v. Great Am. Chicken Corp.*, 903 F.3d 875, 878 (9th Cir. 2018).

62. The first is a discretionary exception based on the number of putative class members found in the state where the action was filed. *See* 28 U.S.C. § 1332(d)(3). However, the exception only applies where the "primary defendants are citizens of the State in which the action was originally filed." *Id.* Here, the action was originally filed in California and, as noted above, none of the Comerica entities are citizens of California. Thus, this exception does not apply.

63. Similarly, 28 U.S.C. § 1332(d)(4) contains two further exceptions to CAFA's grant of jurisdiction, based on the number of putative class members in the state in which the action was filed. However, these exceptions, too, only apply where all primary defendants, or at least one defendant, is a "citizen of the State in which the action was originally filed." *See* 28 U.S.C. §§ 1332(d)(4)(A)(i)(II) and

-17-

1332(d)(4)(B). Given that this action was originally filed in California, and none of the Comerica entities are California citizens, these exceptions also do not apply.

## V. TIMELINESS OF REMOVAL

64. As required by 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within thirty (30) days after service of the Complaint on July 10, 2020. *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) (thirty-day window to remove does not run until formal service is complete under state law).

## VII. VENUE

65. Venue is proper in this Court pursuant to 28 U.S.C. sections 84(c), and 1391.

## VIII. NOTICE TO PLAINTIFF AND STATE COURT

66. This Notice of Removal will be promptly served on Plaintiff and filed with the Superior Court of the State of California in and for the County of San Diego Costa.

67. In compliance with 28 U.S.C. section 1446(a), true and correct copies of all "process, pleadings, and orders" from the state court action served on Comerica or filed by Comerica are attached hereto as Exhibits A-D.

WHEREFORE, having provided notice as is required by law, the above-entitled action is removed from the Superior Court for the County of San Diego to this Court.

1  Dated:  August 6, 2020

2               SHEPPARD, MULLIN, RICHTER &
3               HAMPTON LLP

5          By      *s/ Tracey A. Kennedy*
                   TRACEY A. KENNEDY
6

7          Attorneys for Defendants
           COMERICA INCORPORATED,
8          COMERICA BANK, and COMERICA
           MANAGEMENT COMPANY, INC.
9

-19-